# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**MOLIERE DIMANCHE,**

**Plaintiff,**

**v.**                                                    **Case No: 6:22-cv-2073-CEM-DCI**

**TAKELA JACKSON et al.,**

**Defendants.**

---

# REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motions:

- Plaintiff's Motion to Proceed In Forma Pauperis (Doc. 122)

- Plaintiff's Motion for Sanctions (Doc. 124)

- Plaintiff's Motion for Partial Summary Judgment (Doc. 129)

- Defendants Diamond, Wilson, Bradley, and Acosta's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 130)

- Defendants Mercado and Stickle's Motion to Dismiss (Doc. 132)

- Defendant Frey's Motion to Dismiss (Doc. 133)

- Defendants City of Orlando, Dyer, Herdocia, Jackson, Tabbara, Montes, Cortes, Goss, Fellows, Manganiello, Alban, Massicotte, Nossair, Smith, McConnell, Rivers, and Carty's Motion to Dismiss (Doc. 137)

- Defendants Frey and Frey-Hamner's Motion to Remand Plaintiff's Unlawful-Detainer Action (Doc. 138)

- Plaintiff's Motion for Judicial Notice and Adjudication of Facts (Doc. 145)

- Plaintiff's Motion for Preliminary Injunction (Doc. 154)

- Defendant Frey's Time-Sensitive Motion for Protective Order and to Quash Subpoena to Produce Documents (Doc. 156)

- Plaintiff's Motion for Summary Judgment (Doc. 164)

- Plaintiff's Motion for Sanctions (Doc. 167)

- Plaintiff's Motion to Strike (Doc. 174)

- Plaintiff's Motion for Sanctions (Doc. 176)

- Plaintiff's Motion to Strike (Doc. 178)

**THEREON** it is respectfully **RECOMMENDED** that: Defendants' Motions to Dismiss (Docs. 130, 132, 133, 137) be **GRANTED in part**; the Second Amended Complaint be **DISMISSED**; the case be closed; and the remainder of the Motions (Docs. 122, 124, 129, 138,[1] 145, 154, 156, 164, 167, 174, 176, 178) be **DENIED as moot**.

## I.      Background and Procedural History

The dispute between Plaintiff and at least some of the Defendants has been going on for about a year and a half and is the subject of several cases filed in state and federal courts; Plaintiff filed the instant matter on or about November 23, 2022.  Yet, despite considerable litigation, the Court is still addressing the sufficiency of the operative pleading—in part because the Court stayed the case pursuant to *Younger v. Harris*, 401 U.S. 37 (1971) until the resolution of the criminal charges pending against Plaintiff, but also due to the insufficiency of Plaintiff's pleadings.  The undersigned is again tasked with review of the operative pleading, this time the Second Amended Complaint, upon referral of the parties' next round of dispositive motions.  The undersigned will address the procedural history to demonstrate how the case and the pleadings have evolved over time and to explain why the undersigned recommends that the case be dismissed in the entirety.

---

[1] The undersigned includes an alternative recommendation that the Motion to Remand (Doc. 138) be granted in part and the Fourth Cause of Action in the Second Amended Complaint be remanded, but the undersigned's primary recommendation is that the document purporting to be a removal document be stricken.

Plaintiff, proceeding *pro se*, initiated this action by filing a complaint alleging that 13 Defendants violated various constitutional amendments and federal laws during events related to Plaintiff's arrest and the seizure of Plaintiff's property.  Doc. 1 (the Initial Complaint).  The dispute that is the subject of the Initial Complaint arose because Plaintiff claimed ownership through an attempted adverse possession of a residence located at 921 S. Mills Avenue, Orlando, Florida (the Property).  *Id*.  Defendant Julia L. Frey, a lawyer, challenged Plaintiff's claim of ownership to the Property and pursued civil and criminal actions against Plaintiff.  In relation to this dispute, Orlando Police Department officers arrested Plaintiff, and Plaintiff's property was allegedly seized.

This case followed.  In response to the Initial Complaint, the original 13 Defendants filed their respective motions to dismiss.  Docs. 24, 28, 30, 34.  In those motions, Defendants argued, in part, that the Initial Complaint was a shotgun pleading and, therefore, insufficient pursuant to Federal Rules of Civil Procedure 8 and 10.  *See* Docs. 24, 28, 30, 34.  Plaintiff subsequently moved to amend, seeking to replead in light of the assertions that the Initial Complaint was a shotgun pleading.  *See* Doc. 44 at 1-2.  The Court permitted amendment but reminded Plaintiff of the pleading requirements under Rules 8 and 10 and directed compliance with those Rules in the amended pleading.  Doc. 55 at 5-6.

In the Amended Complaint, Plaintiff alleged nine numbered counts—five claims brought pursuant to 42 U.S.C. § 1983 and four claims brought under Florida state law—and named the same 13 Defendants.  Doc. 63.  The allegations in the Amended Complaint appear to relate to the same underlying events as those in the Initial Complaint: Plaintiff's adverse possession of the Property, his arrest, and his attempts to record a deed.  *See id*.

In response to the Amended Complaint, Defendants filed another set of motions to dismiss. Docs. 63, 70, 73, 74. On referral, the undersigned determined that the litigation should not proceed because Plaintiff was involved in an ongoing criminal matter in state court that was directly related to the instant case. *See* Docs. 90; 100; *State of Florida v. Moliere Dimanche, Jr.*, Case No. 2022-CF-13561. [2] As such, the undersigned recommended that, pursuant to *Younger*, the Amended Complaint be dismissed without prejudice to the extent that Plaintiff sought declaratory or injunctive relief and the case be stayed and administratively closed pending completion of the state court proceedings because of Plaintiff's claim for money damages. Doc. 100 at 12.

In the meantime, the Court entered the Case Management and Scheduling Order. Doc. 88 (the CMSO). Pursuant to the CMSO, the deadline for a motion to join a party or amend pleadings was May 26, 2023. *Id.*

On May 31, 2023, the Court adopted the report and recommendation to the extent that it was not vacated[3]; denied the motions to dismiss as moot; dismissed the Amended Complaint without prejudice pursuant to *Younger*; stayed the case to the extent Plaintiff sought monetary damages; directed Plaintiff to notify the Court within 14 days of completion of the underlying state court proceedings at which point the Court "will lift the stay"; and permitted Plaintiff to file a second amended complaint within 14 days of the stay being lifted. Doc. 104 at 3.

A review of the state records reveals that on August 17, 2023, Plaintiff pled guilty to criminal mischief with damage of more than $200 and trespass on property other than structure or conveyance. *See* www.myclerk.myorangeclerk.com, *State of Florida v. Moliere Dimanche, Jr.*,

---

[2] In the state criminal matter, Plaintiff was charged in the Circuit Court of Orange County, Florida with Grand Theft First Degree and Unlawful Filing of False Documents or Records Against Real or Personal Property.

[3] The undersigned vacated the report to the limited extent it recommended that Defendant Frey's Motion to Dissolve be denied without prejudice. Doc. 102.

Case No. 2022-CF-13561.  The grand theft and unlawful filing of false documents was disposed of as nolle prosequi.  *Id*. As such, Plaintiff moved to lift the stay.

On December 20, 2023, the Court adopted the undersigned's recommendation that the stay be lifted and that the Clerk be directed to reopen the case.  Doc. 115.  The Court also directed Plaintiff to "file an Amended Complaint that cures the deficiencies outlined in the Court's previous Orders."  *Id*.  The Court did not give Plaintiff leave to add new claims or parties.

On January 2, 2024, Plaintiff filed the operative 106-page Second Amended Complaint and, in doing so, added dozens of Defendants not previously named.  Doc. 116.  Plaintiff now seeks relief against 65 Defendants, including the State of Florida, the City of Orlando, the United States Attorney, judges, police officers, agencies, private citizens, and a business.  *Id*.  Some Defendants have filed Motions to Dismiss the Second Amended Complaint, two Defendants have moved for remand on a cause of action, and the parties have filed about a dozen other motions that remain pending for the undersigned's consideration.

## II.    Discussion

As will be discussed, the Second Amended Complaint is due to be dismissed.  First, to the extent Plaintiff seeks to add new claims and parties to this case through the Second Amended Complaint, those efforts violate both the CMSO and the Court's Order lifting the stay.  Second, to the extent Plaintiff purports to remove a state court action as the Fourth Cause of Action in the Second Amended Complaint by making a filing in this case, that filing is due to be stricken.  Third, the Second Amended Complaint is due to be dismissed without leave to amend, as it is a frivolous, shotgun pleading.

A.      **The Second Amended Complaint Violates the Court's Orders**

When the Court entered the CMSO, the Amended Complaint was the operative pleading. The 45-page Amended Complaint named the initial 13 Defendants and contained nine numbered counts.  Doc. 63.  The CMSO set a deadline for Plaintiff to move to join a party or amend the pleadings: May 26, 2023.  Doc. 88.  That deadline expired.

On May 31, 2023, the Court stayed the case.

On December 20, 2023, the Court lifted the stay.  Doc. 115.  In the Order lifting the stay, the Court directed that: "**On or before January 3, 3024**, Plaintiff shall file an Amended Complaint that cures the deficiencies outlined in the Court's previous Orders."  *Id*. (emphasis in original).  The Court did not give Plaintiff permission to add new claims or parties.

On January 2, 2023, Plaintiff filed the Second Amended Complaint.  Like the Amended Complaint, the Second Amended Complaint contains nine numbered counts—now called "causes of action."  But the claims are not all the same.  For example, Count Four of the Amended Complaint is a § 1983 claim, while the Fourth Cause of Action in the Second Amended Complaint is a completely new—and purportedly removed—claim for "unlawful detainer" under a Florida state statute.  *Compare* Doc. 63 at 34 *with* Doc. 116 at 91.  To the extent that the Second Amended Complaint contains new claims—such as the unlawful detainer claim—it is in violation of the CMSO (because it is untimely) and in violation of the December 20, 2023, Order (because it goes beyond amendment to cure specified deficiencies).  As such, any new claims in the Second Amended Complaint are due to be stricken.  *See JTH Tax, LLC v. Stephen A. Gilbert & G-QTS, Inc.*, 2022 WL 4818668, at *2 (M.D. Fla. Sept. 12, 2022), *report and recommendation adopted by*, 2022 WL 4762370 (M.D. Fla. Oct. 3, 2022) ("Courts in the Eleventh Circuit and throughout the country routinely strike amended claims (or counterclaims) that exceed the scope of a court's

order granting leave to file the amended claims.") (collecting cases) *Hill v. Allianz Life Ins. Co.*, 2015 WL 12838838, *4 (M.D. Fla. June 17, 2015) (striking an amended complaint because it exceeded the scope of the court's order granting the plaintiff leave to amend); *Cincinnati Ins. Co. v. Cochran*, 2006 WL 4495335, at *3 (11th Cir. Dec. 27, 2006) (finding that a "district court was well within its discretion when it struck the malicious prosecution counterclaim on the basis that it exceeded the scope of the original order"); *Ivey v. City of West Melbourne*, 2020 WL 4353195, at *3 (M.D. Fla. July 14, 2020), *report and recommendation adopted by*, 2020 WL 4349897 (M.D. Fla. July 29, 2020) (granting the defendants' motion to strike two counts in the plaintiffs' second amended complaint because, in part, the deadline for amending pleadings as set forth in the CMSO expired and the plaintiffs did not seek leave to file an amended complaint containing new causes of action nor did they satisfy the good faith standard).

In addition, in the Second Amended Complaint, Plaintiff purports to add approximately 52 additional Defendants to this case.  Again, to the extent that the Second Amended Complaint adds new parties, the Second Amended Complaint is in violation of the CMSO (because it is untimely) and in violation of the December 20, 2023, Order (because it goes beyond amendment to cure specified deficiencies).  As such, the Second Amended Complaint is due to be stricken to the extent that Plaintiff attempts to add new parties to this case.  *See Ivey*, 2022 WL 4353195, at *3 (granting the defendants' motion to strike two counts of the plaintiffs' amended pleading because the plaintiffs' addition of new claims based on state law against different parties did not comply with the directive to correct deficiencies the court identified in another order); *Stone v. State Auto. Mut. Ins. Co.*, 2017 WL 633081, at *1 (N.D. Ala. Feb. 16, 2017) (striking an amended complaint that joined three additional parties and claims without leave to amend); *Johnson v. Knox Cty.*, 2020 WL 2562806, at *4 (E.D. Tenn. May 20, 2020) (finding that "the inclusion of additional plaintiffs

and defendants beyond those raised in the original [c]omplaint goes beyond the scope of the Court's order granting [p]laintiff leave to file an amended complaint").

**B.    Plaintiff's Purported Removal of the Unlawful Detainer Case**

In the Second Amended Complaint, Plaintiff added as the Fourth Cause of Action: "Unlawful Detainer Florida Statute § 82.03."  Doc. 161.

Two days after he filed the Second Amended Complaint, Plaintiff separately filed documents from a state matter—*Dimanche v. Hamner, et. al.*, Case No. 2023-cc-24147.  Doc. 119 (the Filing).  Excepting the case caption, Plaintiff's signature block, and the attachment of several state court documents, the Filing itself is only the following:

Case No. 6:22-cv-2073-CEM-DCI<br>
State Court Docket<br>
re: FOURTH CAUSE OF ACTION,<br>
Unlawful Detainer Claim

Doc. 119.  The attached state court documents include a "Case Summary" that reflects a removal event on January 4, 2024, and a "Notice of Removal" Plaintiff filed in the state case.  *Id*.  The Notice of Removal states:

> PLEASE TAKE NOTICE that Plaintiff, MOLIERE DIMANCHE, HEREBY **REMOVES** this action to federal court, in the context of case **6:22-CV-2073-CEM-DCI,** specifically in the context of the *FOURTH CAUSE OF ACTION,* premises 289-291.

Doc. 119 at 5 (emphasis in original).  The state court documents also reflect that Plaintiff is the plaintiff in the state court action.

Upon Plaintiff submitting the Filing to this Court, Defendants Frey and Frey-Hamner moved to remand, arguing that Plaintiff is not entitled to remove a state action to this Court since he is acting as the plaintiff in the state action.  Doc. 138 (the Motion for Remand).

Defendants Frey and Frey-Hamner are correct, but Plaintiff's Filing is improper for other reasons as well.  First, to the extent the Filing was an attempt to add a claim to this action, it is in violation of the CMSO and the December 20, 2023, Order for the same reasons discussed in the previous section of this Report.[4]  As such, the undersigned recommends that the Court strike the Filing (Doc. 119).  If the Court agrees, then there is nothing to remand, and Defendants' Motion to Remand (Doc. 138) is moot.

Since this is a report and recommendation, however, and the Court may be inclined to rule directly on the issue of remand, the undersigned will alternatively address some additional issues.  First, the undersigned agrees with Defendants Frey and Frey-Hamner that the "removal" is improper because Plaintiff could not remove his own state action.  *Eldred v. Seafarer Exploration Corp.*, 2013 WL 5954788, at *1 (M.D. Fla. Nov. 7, 2013) ("[F]ederal law is clear that removal is limited to defendants and a plaintiff cannot remove, even in the position of a defendant with respect to a counterclaim.") (citation omitted); 28 U.S.C. § 1441 (providing that a *defendant* may remove a civil action to federal court).

But also, Plaintiff's attempt at removal is improper because a litigant may not remove a state case into an existing federal matter.  *See Kozich v. Deibert*, 2015 WL 12533075, at *1 (S.D. Fla. Aug. 31, 2015) ("There was and is no basis in the record to allow an appendix in support of removal from state court where Plaintiff cannot remove a state court case into an existing federal lawsuit."); *Jackson v. GMAC Mortg. Corp.*, 2016 U.S. Dist. LEXIS 12707, at *2 (S.D. Ala. Feb. 3, 2016) (finding that the removal was defective because the plaintiff attempted to remove a state action into an existing federal action by attaching a notice of removal to a motion to reopen);

---

[4] Additionally, Plaintiff's deadline to file the Second Amended Complaint was January 3, 2024. Doc. 115.  But Plaintiff submitted the Filing on January 4, 2024.  So, if the Court construes it as an attempt to amend the pleadings in this action, it was untimely.

*Alcoser v. Ford*, 2022 WL 4078564, at *2 (5th Cir. Sept. 6, 2022) ("As a procedural matter, a litigant may not properly remove a state court case 'into' an existing federal case as [the plaintiff] attempted to do here.").   The instant matter is ongoing, and the Plaintiff has impermissibly attempted to interject the state action.

Finally, the state case at issue in the Filing is premised entirely on Florida state law—Florida's unlawful detainer statute.  So, even if the Court were to construe the Filing as an attempt to open a new federal case through removal (which it clearly is not), this Court lacks subject matter jurisdiction, as the removed case invokes neither the Court's federal question nor its diversity jurisdiction.  *See* 28 U.S.C. § 1441(a).

In sum, the undersigned recommends that the Court strike the Filing (Doc. 119) or, in the alternative, grant in part the Motion to Remand to the extent that the state cause of action be remanded.

### C.    Defendants' Motions to Dismiss (Docs. 130, 132, 133, 137)

Several of the Defendant have also filed four motions to dismiss.  Docs. 130; 132; 133; 137 (collectively, the Motions to Dismiss).  Each of the Motions to Dismiss is brought by one or more of the Defendants, grouped as follows: (1) Defendants Diamond, Wilson, Bradley, and Acosta (Doc. 130); (2) Defendants Mercado and Sickle (Doc. 132); (3) Defendant Julia Frey (Doc. 133); and (4) Defendants the City of Orlando, Dyer, Herdocia, Jackson, Tabbara, Montes, Cortes, Goss, Fellows, Manganiello, Alban, Massicotte, Nossair, Smith, McConnell, Rivers, and Carty (Doc. 137).[5]

---

[5] Defendants explain that only Defendants City of Orlando, Jackson, Montes, and Tabbara have been served. "However, since all named Defendants to this Motion were sued in their official capacity as representatives of the City of Orlando, to avoid all doubt, they are joining this Motion." Doc. 137 at 1 n.2.

The moving Defendants set forth various arguments in the Motions to Dismiss, but all assert that the Second Amended Complaint is due to be dismissed as a shotgun or frivolous pleading.  Defendants also contend that Plaintiff should not be extended another opportunity to amend because the Second Amended Complaint fails to comply with previous Court Orders.  *See* Docs. 130 at 5-6, 132 at 8, 133 at 19, 137 at 5.  The undersigned agrees.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, a "party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  The Court must liberally construe *pro se* pleadings.  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  A *pro se* pleading, however, must "still comply with procedural rules governing the proper form of pleadings," *Hopkins v. St. Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010),[6] because the Court will not "rewrite an otherwise deficient pleading in order to sustain an action," *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1169 (11th Cir. 2014) (citation omitted).

"A complaint that fails to comply with Rules 8 and 10 may be classified as a shotgun pleading."  *Luft v. Citigroup Global Markets Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015) (internal quotation omitted).  There are four basic categories of shotgun pleadings: 1) those in which "each count adopts the allegations of all preceding counts;" 2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" 3) those that do not separate each cause of action or

---

[6] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.  *See* 11th Cir. R. 36-2.

claim for relief into a different count; and 4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*. at 1323. A court faced with a shotgun pleading has the inherent authority to *sua sponte* demand repleader of such complaints. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006) ("Given the district court's proper conclusions that the complaint was a shotgun pleading and that plaintiffs' failed to connect their causes of action to the facts alleged, the proper remedy was to order repleading *sua sponte*.").

The Second Amended Complaint—now the third iteration of the pleading—falls into the first, second, and fourth categories of a shotgun pleading.

With respect to the first category, Plaintiff "repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein." Doc. 116 at ¶¶ 267, 275, 283, 289, 292, 302, 309, 317, 325. There are 266 paragraphs leading up to the "First Cause of Action" and then each cause of action incorporates all the causes of action that are previously pled. Plaintiff argues that he is merely incorporating by reference in a permissible fashion. *See* Doc. 165 at 6-7. But he is not. This is a quintessential shotgun pleading characteristic, and it leaves both the Court and the 65 Defendants to speculate as to which allegations are intended to support which cause of action against which Defendant. *See U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006) (citations omitted) (finding a complaint that falls into the first category of shotgun pleading "imposes a heavy burden on the trial court, for it must sift each count for the allegations

that pertain to the cause of action purportedly stated and, in the process, disregard the allegations that only pertain to the incorporated counts").

As to the second category of shotgun pleadings, the Second Amended Complaint is replete with conclusory and immaterial allegations.  Just as a few examples within the first 266 paragraphs, Plaintiff includes the following:

- Alban took amusement with the Plaintiff's shoes, which were Christian Louboutin sneakers that were designed with spike-like shards, and indicated that the shards on the shoes would be better served if Orlando police had the same shoes to kick suspects. Doe #3 agreed with him. This vicious expression for a need for the bloody assault of people in police custody lead Dimanche to believe that Alban and Doe #3 were planning on assaulting him while he was in handcuffs. Dimanche did his best to lighten the mood and maintain a friendly demeanor.  ¶ 27;

- Initially, while seated in the waiting area, Edwards instructed Tabbara not to enter the deposition room. Then, he told Tabbara not to get up from his chair as he tried to reason with Dimanche as to why the deposition should be rescheduled to a later date. Then, he outright **refused** to bring Tabbara into the deposition room altogether.  ¶ 71;

- The Plaintiff was left with no choice but to go into the deposition, turn on the camera, and leave it running, anticipating security for the building coming to tell him that the time he reserved for the room was over, after spending hundreds of dollars to secure the attendance of an authorized taker of oaths and a camera man. It was only then that Edwards unwillingly walked Tabbara into the deposition room, 5 minutes later.  ¶ 72 (emphasis in original);

- [Edwards] purchased Dimanche a double-shot espresso, however, Dimanche did not drink it after Edwards instructed the barista to add an additional shot to Dimanche 's drink.  ¶ 84;

- This seemed like, yet another scene from a Hollywood movie where the victims find out they made a wrong turn in some eerie town by the clerk at the gas station, but again, this is not a movie, this is reality for Dimanche.  ¶ 107;

- Carter is a licensed psychologist and behavioral therapist. He is trained to identify and assess human beings, and can easily tell when a person is not being truthful. Carter can also identify signs that a person could possibly be

exhibiting the behavior of a narcissist, a predator, and can easily identify an individual's libidinal and aggressive impulses.  ¶ 239;

- Through negligence, incompetence and plain unfitness, Worrell is responsible for this entire ordeal.  ¶ 242;

- Through negligence, incompetence and plain unfitness, Russell is responsible for this entire ordeal.  ¶ 244; and

- The Defendant Corporations have financially and otherwise benefited as a result of these acts and omissions by keeping Dymond and Frey, the volatile operators and owners of the Defendant corporations, satisfied. They benefitted from facilitating the efforts of Dymond and Frey to the extent it kept the prestigious lawyers happy and Dimanche obedient to their interests. ¶¶ 270, 295, 306.

Doc. 116.  Further, Plaintiff includes three pages of vague and immaterial allegations in a section titled, "A Stolen Life."  There, Plaintiff discusses a 2007 criminal case involving burglary and grand theft charges.  *Id*. at ¶¶ 246-259.  Based on the shotgun nature of the Second Amended Complaint, it is impossible to discern whether this section relates to any particular cause of action against any named Defendant.

The Second Amended Complaint also falls within the fourth category of shotgun pleadings. Eight of the nine causes of action[7] are explicitly alleged to be against "All Defendants."  While it is possible for a plaintiff to aver that all defendants are responsible for all alleged conduct, the facts alleged and incorporated into all counts cannot be vague and conclusory.  *See Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) ("The fact that defendants are accused collectively does not render the complaint deficient" as long as "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct."); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997) (describing a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15

_____

[7] The Fourth Cause of Action is alleged only against Defendants Frey, Frey-Hamner, and Walson.

- 14 -

defendants" as a "prototypical 'shotgun complaint'").  Plaintiff appears to argue that the Second Amended Complaint is based on an overarching conspiracy or conspiracies to deprive him of his rights and that all Defendants are responsible for this conspiracy.  *See* Docs. 162 at 4, 165 at 7. But Plaintiff's conspiracy allegations—to the extent he makes them—are based on vague and conclusory allegations.  *See Ebrahimi*, 114 F.3d at 164.  And Plaintiff spreads alleged conspiracy theories across hundreds of paragraphs without any clear explanation as to how each Defendant is responsible for each cause of action ultimately averred.  Also problematic in this case—which now names 65 Defendants—is Plaintiff's references to "Defendants" when making factual allegations. *See e.g.*, Doc. 116 at ¶¶ 175, 177, 188, 224.  A reader is left without a clear understanding of whether Plaintiff intends to allege that all Defendants are liable under his conspiracy theory, or whether he intends to allege some unnamed subset of the Defendants is liable for some unnamed subset of claims.

A couple examples.  Defendants Nossair and Herdocia appear only a few times within the factual allegations and their conduct purportedly relates to a scheme to rig an election and to jointly conspire to falsify Plaintiff's candidate packet to interfere with the election.  Doc. 116 at ¶¶ 215, 226, 227.  Plaintiff claims that these individuals sought to disqualify Plaintiff from the election and falsified the candidate packet to enforce the theft of property.  *Id*. at ¶ 228.  The Seventh and Eighth Causes of Action—state claims for Malicious Prosecution and False Imprisonment—are alleged to be against "All Defendants."  But Plaintiff makes no specific factual allegations that Defendants Nossair and Herdocia contributed to the "kidnapping" or "captivity" that is apparently the subject of these claims.  *See id*. at ¶¶ 309-324.  Does Plaintiff intend that the causes of action fairly be read to apply to Defendants Nossair and Herdocia?  It is impossible to tell.

Additionally, Plaintiff alleges that Defendant Hinds of the Orange County Sheriff's Office prevented Plaintiff from filing a complaint with the Sheriff's Office.  Doc. 116 at ¶¶ 197-201.  Plaintiff also alleges that Defendant Mina blocked Plaintiff's email address in "furtherance of the embezzlement scheme orchestrated by Lowndes, Dymond and Frey."  *Id.* at ¶¶ 204-205.  Plaintiff claims that Defendant Mina ensured that law enforcement would not investigate Lowndes' crimes or Defendants "Edwards and Wallsh's unlawful practices in the Ninth Judicial Circuit."  *Id.* at ¶¶ 205-206.  Plaintiff claims that Defendant Mina illegally blocked Plaintiff's email.  *Id.* at ¶207.  Taking Plaintiff's allegations as true, Plaintiff fails to give Defendants Hinds and Mina notice of how that conduct violates all eight causes of action attributed to "all Defendants."  Does Plaintiff intend that the Second Amended Complaint be read to aver that Defendants Mina and Hinds along with all the other Defendants engaged in unlawful and deceptive trade practices, imprisoned Plaintiff, subjected him to malicious prosecution, and violated the Hobbs Act?  Again, it is impossible to tell.

So, in sum, the Second Amended Complaint is an amalgamation of the first, second, and fourth categories of shotgun pleadings.  It fails to comply with Rules 8 and 10.  As such, it fails to give fair notice to the 65 Defendants of the allegations against them (and of how the allegations that are made relate to any particular cause of action), and it frustrates the Court's ability to determine if any particular cause of action is sufficiently pled as to any particular Defendant.  Thus, it is due to be dismissed.

So, if the Court accepts the recommendation of dismissal, the Court must still determine whether it should give Plaintiff a fourth opportunity to plead this case.  The undersigned recommends that the Court not allow that fourth attempt.  While leave to amend should be freely give leave when justice so requires (Fed.R.Civ.P. 15), a district court need not grant leave to amend where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to

cure deficiencies by amendments previously allowed"; (2) "allowing amendment would cause undue prejudice to the opposing party"; or (3) the "amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir.2001) (per curiam).

Here, the litigation has been ongoing for a considerable length of time—albeit in part because of the stay—and Plaintiff has had multiple opportunities to address the defects in his pleading.  In the January 13, 2023 Order, in response to Plaintiff's request to file the Amended Complaint, the undersigned directed that Plaintiff shall specifically plead a short and plain statement of the facts by stating what each Defendant did that caused Plaintiff harm or violated Plaintiff's rights, including the dates and places of that conduct.  Doc. 55.  On December 23, 2023, upon directing Plaintiff to file the Second Amended Complaint, the Court also required Plaintiff to cure the deficiencies outlined in the Court's previous orders.  Doc. 115.

As outlined in this report and recommendation, the Second Amended Complaint remains a shotgun pleading.  Thus, Plaintiff has not complied with the Court's Orders or the Rules of this Court.[8]  Further, Plaintiff has been on notice for over a year that his pleadings are deficient.  *See, e.g.*, Doc. 44.  Since Plaintiff has already had three attempts to present his claims, the undersigned recommends that an additional opportunity not be granted.  *See Barmapov v. Amuial*, 986 F.3d 1321, 1326 (11th Cir. 2021) (noting that a district court must grant a represented party one opportunity to amend a shotgun pleading, but does not abuse its discretion in dismissing a subsequent pleading with prejudice if the party "squander[s] that opportunity by filing another shotgun pleading"); *Behr v. Campbell*, 2022 WL 1176949, at *5 n.3 (S.D. Fla. Mar. 18,

---

[8] The undersigned notes that, at the very outset of this case, the Court warned the parties that: "Failure to comply with ANY Local Rules or Court Orders may result in the imposition of sanctions including, but not limited to, the dismissal of this action or entry of default without further notice."  Doc. 4 (emphasis in original).

2022) (noting that "[m]ultiple cases support the dismissal without leave to replead of a *pro se* pleading on shotgun pleading grounds where the *pro se* plaintiff has been advised of the deficiencies in the pleading and has failed to correct them" and collecting cases).

　　As an additional and alternative basis for dismissal without leave to amend in this case (if, for example, the Court finds that Plaintiff was not given sufficient notice and direction to correct the shotgun nature of his pleadings), the undersigned recommends that Plaintiff not be given leave to amend because the Second Amended Complaint is frivolous.  If a court determines that the factual allegations are "clearly baseless" or the legal theories are "indisputably meritless," the complaint can be dismissed as frivolous.  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *see also Porter v. Governor of the State of Fla.*, 667 F. App'x 766, 767 (11th Cir. 2016) ("A lawsuit is frivolous if its claims involve factual contentions that are fanciful, fantastic, irrational, and/or delusional[.]") (citation omitted).  Clearly baseless allegations include those which are "fanciful," "fantastic," or "delusional."  *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992).

　　Here, though the shotgun nature of the Second Amended Complaint makes analysis difficult and a drain on this Court's limited resources, a closer review of the operative pleading makes clear that it is fraught with far-fetched and dubious allegations.  Plaintiff's entire pleading is replete with accusations of multiple conspiracies based on a "sophisticated network" of 65 individuals, agencies, government officials, judges, and the State of Florida—all allegedly working in concert with a law firm to deprive Plaintiff of his rights and to "steal" the residence he attempted to acquire through adverse possession, and all of which culminated in Plaintiff's "kidnapping" and the interference with Plaintiff's bid in a mayoral election.  As examples, Plaintiff claims that Defendants engaged in a wide range of secret and fabricated activities such as acting as a "fake prosecutor; sending "fake documentation" to the Department of Corrections; imprisoning Plaintiff

on the basis of a "fake conviction" and a "fake probation violation"; posting a "fake public notice" to trap Plaintiff; and participating in a "fake phone call" with the bail bonds person and making a "fake phone call to 911" regarding Plaintiff's collection of signatures.  Doc. 116 at ¶¶ 66-81, 146, 217.

Accordingly, the undersigned recommends that the Second Amended Complaint is frivolous and subject to dismissal without leave to amend.  *See Ethier v. Director of FBI*, 2010 WL 331897, at *2 (M.D. Fla. Jan. 28, 2010) (finding that plaintiff's "fanciful and delusional claims are factually baseless and legally frivolous," where plaintiff complained of "electronic torture" and harassing communications by the Department of Justice); *Phillips v. United States*, 1999 U.S. Dist. LEXIS 24364, at *2 (M.D. Fla. Dec. 19, 1999) (finding that plaintiff's "fanciful and delusional claims are factually baseless and legally frivolous," where plaintiff sought the court's "intervention to order the removal of a 'Model 84 electromagnetic spectrum device' which he claims defendants are using as part of 'clandestine and covert operations' to monitor plaintiff's actions using the aid of local media personalities, with the malicious intent to entrap and murder him, in violation of his civil rights and a variety of federal statutes, certain Biblical passages, the 'Magna Charta,' and the Church of the United Kingdom.") (report and recommendation adopted Jan. 5, 2000); *see also Williams v. St. Vincent Hosp.*, 258 F. App'x 293, 294 (11th Cir. 2007) (per curiam) (affirming dismissal of the complaint as frivolous, because it presented "a 'farfetched' scenario based on assertions of a massive conspiracy to monitor [plaintiff] that is 'clearly baseless'").

### III.     Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that the Court:

1.        **STRIKE** the Second Amended Complaint to the extent it contains new defendants and claims;[9]

2.        **STRIKE** Plaintiff's Filing (Doc. 119) as untimely and as an improper attempt to amend or supplement the Second Amendment Complaint or, alternatively, **GRANT in part** Defendants' Motion to Remand (Doc. 138) to the extent that the cause of action be remanded to state court;

3.        **GRANT in part** Defendants' Motions to Dismiss (Docs. 130, 132, 133, 137) to the extent that the Second Amended Complaint be **DISMISSED** without leave to amend and **DENY without prejudice** the remainder of the Motions to Dismiss;

4.        **DIRECT** the Clerk to close the case; and

5.        **DENY as moot** all other pending motions (Docs. 122, 124, 129, 145, 154, 156, 164, 167, 174, 176, 178).

### <u>NOTICE TO PARTIES</u>

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.  28 U.S.C. § 636(b)(1)(C).  A party's failure to serve and file written objections waives that party's right to challenge on appeal any unobjected-

---

[9] Because this is a report and recommendation, the undersigned includes a recommendation to strike the Second Amended Complaint in part prior to dismissal.  While the undersigned recommends that the entirety of the Second Amended Complaint is due to be dismissed, the recommendation to strike is intended to emphasize that a portion could be stricken independent from and prior to dismissal of the remainder.  However, consistent with the undersigned's recommendation, the Court could certainly dismiss the pleading without first striking it in part.

to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on February 14, 2024.

_____
DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy